IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

H.H. Franchising Systems, Inc.,  :  Case No. 1:14-CV-651
      Plaintiff,  :
vs.  :
Carol Frances Brooker-Gardner, et al.,  :
      Defendants.  :

## O R D E R

This matter is before the Court on the motion to dismiss filed by Defendants Michael Gardner, History Makers, Inc., and Ralph & Millie's Place, Inc. (Doc. No. 13). For the reasons that follow, the motion to dismiss is **GRANTED PART AND DENIED IN PART.** Defendant Michael Gardner's motion to dismiss is not well-taken and is **DENIED**. Defendant History Makers, Inc.'s motion to dismiss is not well-taken and is **DENIED**. Defendant Ralph & Millie's Place's motion to dismiss is well-taken and is **GRANTED**. The claims against Defendant Ralph & Millie's Place are **DISMISSED WITHOUT PREJUDICE.**

I. Background

This case arises out of a franchise agreement initially entered into by Plaintiff H.H. Franchising Systems, Inc. ("Franchising Systems") and Defendant Carol Brooker-Gardner ("Brooker-Gardner"). Brooker-Gardner, as an individual, executed a franchise agreement with Franchising Systems in June 2008 in order to purchase a "Home Helpers" franchise and a "Direct Link" franchise. Complaint Exs. A & B. The purpose of

1

these franchises was to provide home healthcare, medication management, emergency response, and other related services to senior citizens. Both franchise agreements contain a forum selection clause in which Brooker-Gardner consented to personal jurisdiction in Ohio and which designated any court located in Hamilton County, Ohio as the appropriate venue to litigate disputes arising out of the agreement. Id. Brooker-Gardner personally guaranteed her performance of the franchise agreements. Complaint ¶ 19.

After signing the franchise agreements, Brooker-Gardner assigned her interests in those businesses to History Makers, Inc. Complaint ¶ 11. History Makers, Inc., is an Oregon corporation originally founded by Brooker-Gardner in 2004 to market various genealogical search and archive services. History Makers was co-owned by Brooker-Gardner and her husband, Michael Gardner. Complaint ¶ 6. Franchising Systems believes, however, that Brooker-Gardner transferred her ownership interest in History Makers to Michael Gardner and that he is currently the sole shareholder of History Makers. Complaint ¶ 35. Brooker-Gardner, however, continues to act as an agent of History Makers. Complaint ¶ 37. The complaint indicates that History Makers generated substantial revenues from the two franchises from 2010 through 2013. Complaint ¶ 28.

Franchising Systems alleges that beginning in January 2014, Brooker-Gardner breached the franchise agreements in two principal ways.

First, Brooker-Gardner informed Franchising Systems that, contrary to past practice, she would not pay royalties on revenues generated from providing medical services on the grounds that medical services were outside the scope of the franchise

2

agreements.  Complaint ¶ 31.  Although Franchising Systems disputed this contention, by May 2014, the monthly revenues reported by Brooker-Gardner dwindled to only a few thousand dollars.  According to Franchising Systems, Brooker-Gardner falsely reported that the decline in revenue was because she had terminated a contract with a state agency to provide skilled medical care.  Complaint ¶ 34.

Second, in August 2012, Brooker-Gardner and Michael Gardner established Ralph & Millie's Place.  They are alleged to be the sole shareholders of Ralph & Millie's Place.  Ralph & Millie's place is an adult daycare service that provides personal care aide assistance and companion services.  Franchising Systems alleges that Ralph & Millie's Place competes with Home Helpers and that Brooker-Gardner diverts business from Home Helpers to Ralph & Millie's Place.  Complaint ¶ 39.  Consequently, Franchising Systems alleges that Brooker-Gardner violated the non-competition clause of the Home Helpers franchise agreement.

Franchising Systems filed a complaint against Brooker-Gardner, Michael Gardner, History Makers, Ralph & Millie's Place, and Carol Brooker, Inc. alleging the following claims; (1) fraudulent transfers of the Home Helpers/Direct Link franchises; (2) breach of the franchise agreements for executing the alleged unauthorized transfers; (3) fraud; (4) breach of the franchise agreements for failure to pay royalties; (5) breach of the non-competition clauses of the franchise agreements; (6) breach of the franchise agreements' confidentiality restrictions; (7) breach of the franchise agreements by failing to place the required number of personal emergency response units; (8) an accounting for revenue; (9) unjust enrichment; (10) misappropriation of trade secrets; (11) tortious interference with contract; (12) federal trademark infringement under 15 U.S.C. § 1051,

3

et seq.; (13) common law unfair competition; (14) civil conspiracy; (15) enforcement of Brooker-Gardner's personal guaranties; and (16) aiding and abetting each Defendant in the conduct forming the basis of the other causes of action.

The purported basis for the Court's subject matter jurisdiction is diversity of citizenship pursuant to 28 U.S.C. § 1332.  The complaint, however, fails to properly allege diversity jurisdiction because it alleges the residency, but not the domicile or state citizenship, of the individual Defendants.  See Complaint ¶ 4,5; Stifel v. Hopkins, 477 F.2d 1116, 1120 (6th Cir. 1973)("[I]t is settled that citizenship for purposes of 28 U.S.C. § 1332(a) means domicile rather than residence[.]").  The Court, nevertheless, has federal question subject matter jurisdiction over Franchising Systems' trademark infringement claim pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1331.  The Court consequently has supplemental subject matter jurisdiction over Franchising Systems' state law claims pursuant to 28 U.S.C. § 1367(a).  AutoZone, Inc. v. Tandy Corp., 373 F.3d 786, 791 (6th Cir. 2004).

Defendants Michael Gardner, History Makers, and Ralph & Millie's Place now move to dismiss the claims against them for lack of jurisdiction over the person pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  These Defendants contend that they are not subject to the personal jurisdiction of the Court because their contacts with the State of Ohio are insufficient to satisfy the Due Process Clause and that they are not otherwise bound by the forum selection clauses in the franchise agreements because they are not parties to those agreements.  Franchising Systems apparently concedes that these Defendants have insufficient contacts with Ohio to establish personal jurisdiction in the traditional manner.  For instance, Franchising Systems

4

responsive brief does not contain any analysis of the personal jurisdiction question from a Due Process Clause perspective. Nevertheless, Franchising Systems contends that at least Gardner and History Makers signed agreements consenting to personal jurisdiction in Ohio. Moreover, Franchising Systems argues, each of these Defendants is "closely related" to Brooker-Gardner and, as such, is bound by the forum selection clauses in the franchise agreements.

## II. Rule 12(b)(2) Standard of Review

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides for dismissal of a claim for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). As the plaintiff, Franchising Systems bears the burden of proving that the Defendants are subject to personal jurisdiction in Ohio. Air Products & Controls, Inc. v. Safetech Int'l, Inc., 503 F. 3d 544, 549 (6th Cir. 2007). The plaintiff needs to make a prima facie case showing that the Court has personal jurisdiction over the defendants in order to survive a motion to dismiss. Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., 91 F.3d 790, 792 (6th Cir. 1996). In deciding a motion to dismiss for lack of personal jurisdiction, the Court may resolve the motion without an evidentiary hearing; the Court, however, must construe the pleadings, affidavits, and other evidence in the light most favorable to the plaintiff, Bird v. Parsons, 289 F. 3d 865, 871 (6th Cir. 2002), and should not weigh "the controverting assertions of the party seeking dismissal." Theunissen v. Matthews, 935 F.2d 1454, 1459 (6th Cir. 1991).

## III. Analysis

Franchising Systems contends that the Court has personal jurisdiction over

Michael Gardner, History Makers, and Ralph & Millie's Place because they consented to personal jurisdiction in Ohio by agreeing to a forum selection clause. "The use of a forum selection clause is one way in which contracting parties may agree in advance to submit to the jurisdiction of a particular Court." Preferred Capital, Inc. v. Associates in Urology, 453 F.3d 718, 721 (6th Cir. 2006). The presence of a valid and enforceable forum-selection clause obviates the need to conduct a due-process and minimum-contacts analysis because such a clause acts as consent to jurisdiction in the contracted-for forum. Id.

Although the forum selection clauses are enforceable, the Court must determine which parties are bound by them. Franchising Systems argues that although Michael Gardner and History Makers are not original signatories to the franchise agreements they have assumed ownership in the franchised businesses and are thereby bound by the Ohio forum selection clauses. In addition, Franchising Systems maintains that Defendants' Michael Gardner, History Makers, and Ralph & Millie's Place should be bound by the forum selection clauses because they are "closely related" to Brooker-Gardner. Complaint ¶ 17. In response, defendants Michael Gardner, History Makers, and Ralph & Millie's Place argue that because they were not parties to the franchise agreements, they did not waive the personal jurisdiction via the forum selection clauses.

"[A] non-signatory to a contract may be bound by a forum selection clause in that contract if the non-signatory is so sufficiently 'closely related' to the dispute that it is foreseeable that the party will be bound." Baker v. LeBoeuf, Lamb, Leiby & Macrae, 105 F.3d 1102, 1106 (6th Cir. 1997). "In determining whether a non-signatory is closely related to a contract, courts consider the non-signatory's ownership of the signatory, its

6

involvement in the negotiations, the relationship between the two parties and whether the non-signatory received a direct benefit from the agreement." Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA, 779 F.3d 214, 219 (3d Cir. 2015). Additionally, "shareholders, officers, and directors of a corporation may be bound by a forum selection clause in a corporate contract." Highway Commercial Servs. v. Zitis, No. 2:07-CV-1252, 2008 U.S. Dist. LEXIS 32487, at *10 (S.D. Ohio Apr. 21, 2008) (citing Marano Enter. of Kansas v. Z-Teca Rest., L.P., 254 F.3d 753, 757 (8th Cir. 2001)). The principal consideration, however, is whether the non-signatory should have reasonably foreseen that he might be required to appear in another jurisdiction:

> [C]ourts considering this question of whether a non-signatory may be bound by a forum selection clause take a common sense, totality of the circumstances approach that essentially inquiries into whether, in light of those circumstances, it is fair and reasonable to bind a non-party to the forum selection clause. . . . [T]his approach places emphasis on whether it should have been reasonably foreseeable to the non-signatory that situations might arise in which the non-signatory would become involved in the relevant contract dispute.

Regions Bank v. Wyndham Hotel Mgmt., Inc., No. 3:09-1054, 2010 U.S. Dist. LEXIS 23371, *16-*17 (M.D. Tenn. Mar. 12, 2010).

With this standard in mind, the Court considers whether Defendants are subject to personal jurisdiction in Ohio.

### A. Michael Gardner

Franchising Systems contends that Michael Gardner assumed ownership of the Home Helpers franchise and is bound by the forum selection clauses of the franchise agreements. In addition, Franchising Systems argues that Gardner is closely related to Brooker-Gardner such that he could reasonably foresee being bound by the forum selection clauses. In support of these arguments, Franchising Systems notes that Gardner was involved in the initial investigation of the franchised businesses. Doc. 14-1

7

¶ 6. Additionally, Michael Gardner signed the deposit remittance form and personally signed the check for the required $5,000 deposit towards the purchase of the franchises. Doc. 14-1, Exs. B & C. Gardner also attended Franchising Systems' training for new franchisees and was an active participant in that training. Doc. 14-1 ¶ 12; Id. Ex. F.

In April 2009, both Gardner and Brooker-Gardner signed an "Addendum to Franchise Agreement" in which they wrote "owners" in the signature block. Complaint ¶ 16; Complaint Ex. E. Franchising Systems argues that by signing the Addendum to the Franchise Agreement, Gardner voluntarily confirmed he had become an owner of the franchises. Gardner also signed a confidentiality agreement acknowledging a financial agreement with Home Helpers. Doc. 14-1 ¶ 17; Id. Ex. H. Finally, Franchising Systems' records indicate that Gardner had an active role in the ownership of Home Helpers and had numerous communications with Franchising Systems' Support personnel from 2009 through 2012. Doc. 14-1 ¶ 25.

Gardner, however, argues that because he was not a purchaser of either franchise, and was not a signatory to the franchise agreements, the forum selection clauses are not applicable him. He contends that he enjoyed no direct benefit from the agreements and argues that he was not an owner or employee of either franchise. Gardner also argues that he is not "closely related" to the business dealings between Brooker-Gardner and Franchising Systems. Therefore, he contends, it was not foreseeable that he would be subject to the forum selection clauses in the franchise agreements.

8

Even though Gardner is a non-signatory to the Franchise Agreement, the Court concludes that he is "closely related" to Brooker-Gardner.  Applying the common sense approach to the alleged facts in this case, Gardner is directly related to the franchise agreements and the disputes arising out of them.  Viewing the record in the light most favorable to Franchising Systems, Gardner was intimately involved in the dealings of the Home Helpers franchise.  He signed the deposit remittance form along with personally signing the $5,000 deposit check that went towards the purchase of the franchise.  Gardner attended the initial training necessary to open the franchise and was an active participant in the training programs.  He signed an "Addendum to Franchise Agreement" in April 2009, indicating that he was an owner of the franchise.  In addition, Gardner signed a confidentiality agreement acknowledging receipt of a letter from Franchising Systems suspending certain payment obligations.  Franchising Systems' records indicate numerous occasions where Gardner communicated with Franchising Systems' support personnel.  Doc. 14-1 ¶ 25.  Under those circumstances, the Court concludes that Gardner was "closely related" to Brooker-Gardner.  Gardner, therefore, is subject to the forum selection clauses and to personal jurisdiction in Ohio.

## B. History Makers

According to the complaint, History Makers was originally owned by both Brooker-Gardner and Michael Gardner.  Complaint ¶ 6.  As noted above, at some point, Brooker-Gardner allegedly assigned her interests in the franchises to History Makers. Franchising Systems argues that History Makers is closely related to Brooker-Gardner and, therefore, History Makers could reasonably have foreseen being bound by the forum selection clauses in the franchise agreements.

9

History Makers argues that because it did not sign the franchise agreements the forum selection clauses are not applicable to it.  Moreover, History Makers argues that it is not "closely related" to Brooker-Gardner because it was not reasonably foreseeable that it would be involved in a contract dispute between her and Franchising Systems.  In making this argument, however, History Makers generally and improperly views the record in a light most favorable to itself.  History Makers, for instance, focuses on whether there was technical compliance with the agreements' requirements for assigning a franchise instead of the circumstantial evidence, discussed further below, indicating that Brooker-Gardner did in fact assign her franchise agreements to History Makers.

In support of a conclusion that Brooker-Gardner and History Makers are closely related, Franchising Systems notes that History Makers signed the "Health Insurance Portability and Accountability Act, Public Law 104-191 ("HIPPA") Business Associate Agreement" in September 2013.  Complaint ¶ 14; Complaint Ex. D.  The HIPPA Agreement governs the uses and disclosures of protected health information between the covered entity (History Makers) and the business associate (Franchising Systems).  The signed agreement identifies History Makers as the covered entity.  The HIPPA Agreement contains a clause providing that "the laws of the State of Ohio govern all aspects of this agreement."  The HIPPA Agreement also contains a clause that each party signing the agreement submits to the jurisdiction of state and federal courts located in Hamilton County, Ohio.  Doc. No. 14-1, at 51.

Additionally, Franchising Systems notes that in October 2012, Brooker-Gardner signed a Home Helpers Terms of Use Agreement identifying History Makers as the

10

franchisee. The Terms of Use Agreement was for the franchisee's use of Franchising Systems' website. The Terms of Use Agreement form contains a provision indicating that "all provisions of your Home Helpers and/or Direct Link Franchise Agreements, specifically including the provisions regarding advertising, arbitrations, and jurisdiction, shall govern and be fully applicable to this Agreement." Doc. No. 14-1, at 53-54. Franchising Systems also points out that there were two certificates of liability insurance identifying "History Makers, Inc. dba Home Helpers" as the insured. Doc. 14-1, at 55-56. Franchising Systems argues that this evidence indicates that Brooker-Gardner assigned her interest in the franchise agreements to History Makers which in turn would subject History Makers to the forum selection clauses.

Even though History Makers is a non-signatory to the franchise agreements, the Court concludes that History Makers is "closely related" to Brooker-Gardner. When an assignment has occurred, even if the assignee is not a signatory to the original contract, the assignee satisfies the "closely related" definition and is "bound by the forum selection clauses contained in an underlying contract, to which the assignee is not a signatory." Villanueva v. Barcroft, 822 F. Supp. 2d 726, 737-38 (N.D. Ohio 2011). Viewing the record in the light most favorable to Franchising Systems, it appears that Brooker-Gardner assigned her interests in Home Helpers to History Makers. Therefore, History Makers is bound by the forum selection clauses by virtue of the apparent assignment of the franchises. Moreover, applying the common sense approach to the alleged facts in this case, History Makers is directly related to the franchise agreements and the current dispute. The record, viewed in the light most favorable to Franchising Systems, demonstrates that History Makers was involved in the dealings of the Home

11

Helpers Franchise.  Brooker-Gardner signed the HIPPA Agreement naming History Makers as the covered entity as well as a website terms of use agreement listing History Makers as the franchisee.  In addition, the certificates of liability insurance were completed identifying History Makers as the company that is insured.  The record, therefore, indicates that History Makers and Brooker-Gardner are closely related for purposes of the personal jurisdiction analysis.

### C. Ralph & Millie's Place

Finally, Franchising Systems argues that Ralph & Millie's Place is closely related to Brooker-Gardner because she owns the corporation and it could reasonably foresee being bound by the forum selection clauses.

Ralph & Millie's Place, however, contends that it is not bound by the forum selection clauses because it did not sign the franchise agreements.  It also claims that it has not directly benefitted from the franchise agreements.  Ralph and Millie's Place also argues that it would not be foreseeable that it would be involved in a contract dispute with Franchising Systems, and, therefore, it is not closely related to Brooker-Gardner.

Even though Ralph & Millie's Place is owned by Brooker-Gardner, the Court concludes that Ralph & Millie's Place is not "closely related" to Brooker-Gardner and is not subject to the forum selection clauses.  Applying the common sense approach to the alleged facts in this case, Ralph & Millie's Place does not appear to be directly related to the franchise agreements and current dispute.  Unlike Defendants Gardner and History Makers, the record fails to show that Ralph & Millie's Place was involved in the operations of the Home Helpers Franchise.  Also unlike History Makers, there are no documents indicating that Ralph & Millie's Place assumed an ownership interest in

12

either of the franchises.  Although Ralph & Millie's Place is a business owned by Brooker-Gardner, the record does not demonstrate any connection between Ralph & Millie's Place and the two franchises.

Accordingly, the Court concludes that Ralph & Millie's Place is not subject to personal jurisdiction in Ohio.

<u>Conclusion</u>

For the reasons stated above, Defendants' motion to dismiss is **GRANTED PART AND DENIED IN PART.**  Defendant Michael Gardner's motion to dismiss is not well-taken and is **DENIED.**  Defendant History Makers, Inc.'s motion to dismiss is not well-taken and is **DENIED.**  Defendant Ralph & Millie's Place's motion to dismiss is well-taken and is **GRANTED.**  The claims against Defendant Ralph & Millie's Place are **DISMISSED WITHOUT PREJUDICE.**

    **IT IS SO ORDERED**

Date <u>July 21, 2015</u>                    <u>s/Sandra S. Beckwith</u>
                                                    Sandra S. Beckwith
                                   Senior United States District Judge